**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 31 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CONSERVATION CONGRESS, a non-profit organization,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>UNITED STATES FOREST SERVICE,<br><br>Defendant-Appellee. | No. 15-15737<br><br>D.C. No.<br>2:14-cv-02228-GEB-AC<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., District Judge, Presiding

Argued and Submitted March 16, 2017
San Francisco, California

Before: TALLMAN and WATFORD, Circuit Judges, and GUIROLA,[**] Chief
District Judge.

Conservation Congress appeals the district court's grant of summary

judgment in favor of the United States Forest Service ("USFS") in its action under

the National Forest Management Act ("NFMA"), the National Environmental

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Louis Guirola, Jr., Chief United States District Judge
for the Southern District of Mississippi, sitting by designation.

Policy Act ("NEPA"), and the Administrative Procedure Act ("APA"). Conservation Congress challenges USFS's authorization of the Porcupine Vegetation and Road Management Project ("Project") in the Shasta-Trinity National Forest. Specifically, Conservation Congress alleges that USFS failed to comply with the NFMA's snag requirements, did not take the requisite "hard look" at environmental consequences, and should have prepared an Environmental Impact Statement ("EIS") for the Project. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. USFS did not arbitrarily conclude that the Project complied with the NFMA's snag standards. *See* 16 U.S.C. §§ 1604(a), (i); *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 897 (9th Cir. 2002). As part of its environmental review, USFS conducted site visits to proposed treatment units in 2011. Those field studies determined that each treatment unit had "at least two snags per acre greater than 15 inches [in diameter]." This finding is consistent with the Shasta-Trinity National Forest Land and Resource Management Plan ("Forest Plan"), which requires all treated areas of the forest to retain an average of 1.5 snags per acre greater than 15 inches in diameter at breast height and 20 feet tall. And because the Project's proposed treatment methods will retain all existing snags greater than 15 inches in diameter, "unless deemed a safety hazard by the purchaser, or in the case of a need to meet coarse woody debris (CWD)

requirements," USFS has shown both that proposed treatment units meet snag standards and that treatment methods will not reduce snag numbers below Forest Plan minimums. *Lands Council v. McNair*, 537 F.3d 981, 989, 994 (9th Cir. 2008) (en banc). USFS has therefore satisfied the NFMA.

2. USFS took the required "hard look" at the Project's anticipated effect on snag numbers. 42 U.S.C. § 4332(2)(C); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989); *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 89 (1983); 40 C.F.R. § 1502.16. The 2011 field studies established a snag baseline in proposed treatment units, *Am. Rivers v. FERC*, 201 F.3d 1186, 1195 n.15 (9th Cir. 1999), and USFS compared that baseline to the effect treatment methods will have on snag levels. Because the Project only removes snags in two limited circumstances, it was reasonable for USFS to conclude that treatment methods will not reduce snag numbers below Forest Plan standards. USFS has therefore complied with NEPA with respect to the Project's effect on snag numbers.

3. USFS appropriately considered all reasonable Project alternatives. 42 U.S.C. § 4332(2)(E); *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 915 (9th Cir. 2012) (quoting *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1246 (9th Cir. 2005)). The Project's Environmental Analysis ("EA") considered a total of fourteen alternatives, five of which were discussed in detail.

40 C.F.R. § 1502.14. USFS also considered an alternative involving no treatment within owl habitat—Alternative 6—but ultimately decided to reject that alternative. *See id.* In making this decision, USFS did not act arbitrarily. USFS reasonably concluded that not treating 17% of the Project area would thwart the major purposes of the Project—to improve overall forest health by reducing fuel loads and preventing catastrophic wildfires, reduce damage from insect infestation, and remove impediments to efficient tree growth—which would benefit the owl and its habitat over the long term. USFS further concluded that its decision to reject Alternative 6 was not inconsistent with its earlier management decision to avoid logging in the Late-Successional Reserve, as that area contains some of the highest quality owl habitat in the region. NEPA only requires USFS to consider alternatives reasonably related to the purposes of the Project, *Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 868 (9th Cir. 2004), and we hold that USFS has satisfied that standard here.

4. USFS properly analyzed the cumulative impacts of the Porcupine Project together with other actions, and the agency used a reasonable scope in that analysis. *Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1007 (9th Cir. 2011); 40 C.F.R. § 1508.7. In contrast to Conservation Congress's claim, the Council on Environmental Quality ("CEQ") Handbook does not require USFS to use the owl's "natal dispersal" distance in its analysis. The

4

Handbook is not afforded the same level of deference as formal CEQ regulations, *see Andrus v. Sierra Club*, 442 U.S. 347, 358 (1979), and it specifically notes that it is "not [to] be viewed as formal CEQ guidance [or] intended to be legally binding." Absent a specific regulation curtailing agency deference in this case, we will not disturb the application of both USFS and Fish & Wildlife Service expertise to assess the impact here. *Kleppe v. Sierra Club*, 427 U.S. 390, 413–14 (1976).

5. Finally, USFS was not required to prepare an EIS for the Porcupine Project, and its ultimate finding of no significant impact ("FONSI") is supported by the record. 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.13. An EIS is not required if there is simply some uncertainty over the Project's anticipated effects; rather, the Project's effects must be "highly" uncertain. *Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1011 (9th Cir. 2006). Conservation Congress misses this distinction. While there is some uncertainty regarding the effect fires have on foraging habitat, USFS has explained that owls are known to avoid high and moderate burn areas for use as roosting and nesting habitat, a habitat considered to be of higher quality than foraging habitat. In other words, while the uncertain effect of fires in foraging areas may cast doubt on some aspects of the Project, the Project's anticipated effects as a whole are not highly uncertain and do not trigger the need for an EIS. *Id.*; *see also* 40 C.F.R. § 1508.27(b)(5).

The same conclusion applies to Conservation Congress's claim that, because

a limited amount of logging will occur in areas designated as critical habitat, an EIS is required to fully explore the effect logging will have in those areas. *See* 40 C.F.R. §§ 1508.27(b)(3), (9). But Conservation Congress has not shown that these logging practices will *significantly* affect the environment. *See* 42 U.S.C. § 4332(2)(C); *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir. 1998). Rather, as USFS has explained, logging in designated critical habitat will be limited to areas that support lower-quality owl habitat—and no forest treatment will occur in nesting and roosting habitat. We think USFS has provided a "'convincing statement of reasons' to explain why [the Project's] impacts are insignificant." *Blue Mountains*, 161 F.3d at 1212 (citation omitted). USFS's FONSI is well supported, and USFS was therefore not required to prepare an EIS.

Each party shall bear its own costs.

**AFFIRMED.**